IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil No. 3:18-cv-00002-RJC

| CYNTHIA JACKSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Judgment on the Pleadings, (Doc. No. 11); Defendant's Motion for Summary Judgment, (Doc. No. 13); and the parties' briefs and exhibits in support. The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Cynthia Jackson ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed applications for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI of the Social Security Act ("SSA") on March 8, 2016, alleging a disability onset date of January 1, 2010. (Doc. Nos. 10 to 10-1: Administrative Record ("Tr.") 10). Her application was denied first on August 25,

1

2016, (Tr. 101–02), and upon reconsideration on September 15, 2016. (Tr. 137–38). Plaintiff filed a timely request for a hearing on September 28, 2016, (Tr. 174–75), and an administrative hearing was held by an administrative law judge ("ALJ") on March 1, 2017. (Tr. 34).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 7–28). Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied Plaintiff's request for a review. (Tr. 1–6). After having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B.   Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the SSA. (Tr. 10). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on January 1, 2010 due to a combination of physical and mental impairments.[2]

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

[2] These impairments are degenerative disc disease of the lumbar spine, bilateral osteoarthritis of the hip, and schizoaffective disorder. (Tr. 73, 340, 359, 434).

Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 22–23). In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 24–25).

In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that she suffered from severe physical and mental impairments,[3] and that her impairments did not meet or equal any of the

---

[3] The ALJ concluded that Plaintiff has the following severe impairments: osteoarthritis of the bilateral hips; psychosis; bipolar disorder; and a history of cocaine and alcohol abuse. (Tr. 13).

impairments listed in the Administration's regulations. (Tr. 12–16). Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). The ALJ found that Plaintiff has "the [RFC] to perform medium work . . . except no more than occasional direct contact with customers; and simple routine tasks." (Tr. 18–20). Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which she had previously been employed. (Tr. 21). Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in her RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 21–22). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three representative occupations that exist in significant numbers in the national economy: "hand packager,"[4] "laundry worker,"[5] and "machine packager."[6] (Tr. 22). The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's applications for Title II and XVI benefits were denied. (Tr. 22–23).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty

---

[4] DOT 559.687-074, 1991 WL 683797.
[5] DOT 302.685-010, 1991 WL 672657.
[6] DOT 920.685-078, 1991 WL 687942.

4

in her determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner,

assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

Plaintiff alleges that the ALJ failed to (1) include limitations in Plaintiff's RFC that would account for Plaintiff's ability to maintain concentration, persistence, or pace ("CPP"), or to stay on task; and (2) sufficiently explain elsewhere in the decision why no further limitations in the RFC were necessary. Because the Court finds that substantial evidence supports the ALJ's mental-RFC finding, the Court affirms the decision of the Commissioner and rejects Plaintiff's allegations of error.

Plaintiff argues that the ALJ's RFC determination failed to include non-exertional limitations on Plaintiff's ability to stay on task where he first found that Plaintiff was moderately impaired in the ability to maintain CPP. "[T]he ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). "Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. As a result, Mascio stands for the rule that an ALJ must either adopt a limitation that addresses a claimant's ability to stay on task or explain why such a limitation is unnecessary, even in the face of the claimant's CPP limitations. Grant v. Colvin, No. 1:15-CV-00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016). Mascio does not stand for

6

the proposition, however, that remand is automatically warranted when an ALJ finds a moderate limitation in CPP but fails to provide a detailed analysis of a plaintiff's ability to stay on task. Holbrook v. Berryhill, 2018 WL 325244 at *4, No. 3:16-cv-00713 (W.D.N.C. Jan. 8, 2018). So long as an ALJ's RFC assessment is supported by substantial evidence in the record, and other inadequacies in the ALJ's decision do not frustrate meaningful review, an ALJ has met his Mascio duty. Mascio, 780 F.3d at 636 ("[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."). Remand for lack of discussion is appropriate only if the ALJ's opinion is "'sorely lacking' in a manner that 'frustrates meaningful review.'" Hubbard v. Berryhill, No. 3:17-CV-677, 2018 WL 3744017, at *6 (W.D.N.C. Aug. 7, 2018) (quoting Ponder v. Berryhill, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017)).

Here, the ALJ assigned Plaintiff a moderate limitation in CPP, (Tr. 17), but limited Plaintiff to simple, routine tasks with only occasional direct contact with customers in the RFC. (Tr. 18). On its face, the RFC fails to address Plaintiff's ability to stay on task. Therefore, the Court must look to the ALJ's decision to determine if he adequately explained why Plaintiff does not require a limitation addressing the ability to stay on task and to examine whether substantial evidence supports his RFC determination.

In his decision, the ALJ concluded that Plaintiff has moderate limitations with CPP:

7

> With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations. Dr. Messler stated that the claimant would likely have difficulty performing simple, routine, repetitive tasks without becoming distracted by the voices she hears. The claimant was able to work after her amended alleged onset date and completed those tasks. She also had a wide range of daily activities. The evidence does show that the claimant has consistently complained about hallucinations.

(Tr. 17). Separately, the ALJ described Plaintiff's limitations in "understanding, remembering, or applying information" as "mild." (Id.). He explained that, "[a]lthough Dr. Messler[7] stated that she expected that the claimant would have difficulty understanding, retaining, and following instructions, the claimant has the ability to follow one or two-step oral instructions." (Id.). The ALJ also noted that Plaintiff "has also expressed an interest in finding part-time work, . . . has lived independently . . . has been able to work,[8] and has been able to sell alcohol from her home." (Id.). On the whole, the Court finds that, although the ALJ categorized Plaintiff as having moderate limitations in CPP, the rest of the ALJ's Step-Three findings demonstrate that Plaintiff has an ability to work despite her moderate CPP limitations. "[W]here the ALJ cites specific evidence in the record that supports

---

[7] Dr. Messler is a consultative psychologist who performed a comprehensive clinical psychological evaluation of Plaintiff in July 2016 and diagnosed Plaintiff with Schizophrenia, Continuous and Alcohol Use Disorder, Moderate to Severe, and Stimulant Use Disorder (Cocaine). (Tr. 14–15).

[8] In August 2016, Plaintiff also reported to Dr. T. Ball, a consultative physician who evaluated Plaintiff for her physical impairments, that "she works occasionally doing cleaning at a trucking company" and had even worked the day prior to seeing Dr. Ball. (Tr. 15). Dr. Ball noted that Plaintiff reported "that she could walk for 20–30 minutes, stand for 20 minutes, lift 20 pounds, and sit for 20 to 30 minutes." (Id.). Thus, as demonstrated by Plaintiff's own allegations, Plaintiff was able to perform some type of work six years after her alleged disability onset date of January 1, 2010. (Tr. 10).

8

claimant's ability to work despite her moderate difficulties in concentration, persistence or pace, including specific facts about the claimant's activities of daily living and relevant medical testimony and evidence, this satisfies the requirements of Mascio. Finney v. Berryhill, No. 5:16-CV-00188-MR, 2018 WL 1175229, at *5 (W.D.N.C. Mar. 6, 2018).

Furthermore, the evidence the ALJ cited when determining Plaintiff's RFC also supports the ALJ's conclusion that Plaintiff's moderate limitations in CPP do not affect her RFC. First, the ALJ expressly stated that he "assessed [Plaintiff's] mental [RFC]." (Tr. 18). While the ALJ cited Dr. Messler's findings and opinions that Plaintiff's "mental health and substance use disorders precluded her from paid work" and that her "difficulty concentrating" would prevent her from performing paid work, the ALJ found Dr. Messler's assessment to be inconsistent with the opinion of Dr. Racine, a psychiatrist, and Plaintiff's own statements. (Tr. 19).

For example, the ALJ explained that Dr. Racine reported that Plaintiff was being treated with Risperidone and Depakote in October 2015,[9] and that she subsequently refused to come to Dr. Racine's office for her assessment stating that

---

[9] Earlier in his decision, at Step Two, the ALJ cited medical evidence from Dr. Hendra, a psychiatrist who evaluated Plaintiff in April 2016. (Tr. 13). Dr. Hendra's report indicated that Plaintiff also told her that "when she takes the Risperdal and Depakote she actually does better but was not compliant." (Tr. 13). Additionally, the ALJ also noted that Plaintiff testified that "she takes over-the-counter medication for pain that decreases her pain from a 7 to a 6 on a scale of 1–10." (Tr. 19). This points to a determination that Plaintiff is not disabled since her symptoms can be controlled by medication. "If a symptom can reasonably be controlled by medication or treatment, it is not disabling" under the Act. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

9

she was okay. (Tr. 19). Plaintiff explained that "she was feeling much better" since coming into the hospital and denied any suicidal or homicidal ideations or psychosis. (Id.). "Objectively, there was no evidence of psychosis." (Id.). Additionally, the ALJ noted that Plaintiff reported at InnerVision—a human service organization that provides resources, services, and support in the areas of employment, education, and wellness for individuals with psychiatric disabilities, (Tr. 15)—that "her symptoms had greatly decreased with medications and psycho-education and she had learned to manage her symptoms." (Tr. 16, 19). Accordingly, the ALJ found "that the inconsistencies in the claimant's testimony with other reports from the claimant and the documentary evidence diminish the persuasiveness of her allegations concerning her impairments and limitations of function." (Tr. 20). The ALJ logically linked the evidence to his not-disabled conclusion:

> This indicates that the claimant does improve when she is compliant with treatment. Further, although Dr. Messler noted significant limitations on the claimant due to her mental impairments, the claimant indicated a good range of daily activities. She stays home, prays, watches people outside, does household chores, smoke[s], fixes herself meals, and learned how to use a DVD player. If the claimant is currently using drugs or alcohol, they do not interfere with her daily activities. She is also able to sell alcohol out of her own home.

(Tr. 20). The ALJ also explained that this conclusion was further supported by the opinions of the State Agency Medical Consultants, whose opinions "must be considered and weighed as those of highly qualified physicians and psychologists, who are experts in the evaluation of the medical issues in disability claims under the [SSA]." (Id.). And these medical experts concluded that Plaintiff could perform a range of medium work, could understand and follow simple instructions, could

sustain attention for simple tasks, and could have limited interaction with others. (Id.). The ALJ explained that he gave great weight to the opinions of the State Agency Medical Consultants. (Id.). And he explained why he gave less weight to Dr. Messler's opinion: because her assessment was inconsistent with the bulk of evidence in the record and Plaintiff's own allegations. Therefore, because Dr. Messler's opinion was the principal piece of evidence that alleged Plaintiff has moderate limitations in CPP that would prevent her from working, the ALJ sufficiently explained why Plaintiff did not need additional limitations—besides being limited to performing simple, routine tasks and having only occasional direct contact with customers—in her RFC to compensate for her mental limitations, including her ability to stay on task.

In sum, the Court finds that substantial evidence supports the ALJ's mental-RFC finding. The ALJ constructed a sufficient narrative that explains how he arrived at his conclusions—something which allows this Court to conduct a meaningful review. Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) ("[T]he ALJ must *both* identify evidence that supports his conclusion *and* "build an accurate and logical bridge from [that] evidence to his conclusion." (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016))). Because "Mascio only requires a remand when an ALJ's opinion is 'sorely lacking' in a manner that 'frustrates meaningful review'" the Commissioner's decision should be upheld. Ponder v. Berryhill, No. 1:15-CV-00289, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017) (quoting White v. Colvin, No. 3:15-CV-00197, 2016 WL 3381265, at *5 (W.D.N.C. June 14, 2016)).

IV. CONCLUSION

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Judgment on the Pleadings, (Doc. No. 11), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED;** and

3. The Clerk of Court is directed to close this case.

Signed: March 22, 2019

Robert J. Conrad, Jr.
United States District Judge